FILED
2011 Apr-13  AM 08:52
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ANNA Of. LANGLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 09-G-1148-NE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Anna Of. Langley, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Act.

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards

were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)(4).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the
         Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the
         national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800

F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two,

she will automatically be found disabled if she suffers from a listed impairment.  If the

claimant does not have a listed impairment but cannot perform her past work, the

burden shifts to the Secretary to show that the claimant can perform some other job."

Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ determined the plaintiff met the first two tests,

but concluded she did not suffer from a listed impairment.  The ALJ found the plaintiff

was able to perform her past relevant work, and accordingly found her not disabled at

step four.

## DISCUSSION

### I.

### ASSESSING RESIDUAL FUNCTIONAL CAPACITY

        Plaintiff's attorney makes a number of arguments concerning the absence

of a residual functional capacity ("RFC") assessment in the medical records.  Before

considering the merits of plaintiff's appeal, the court will consider those arguments.

## A.

### IS RFC A MEDICAL ASSESSMENT?

The plaintiff argues that an RFC assessment is a medical assessment:

Indeed, RFC is defined as follows:

> Residual Functional Capacity. ***A medical assessment*** of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). RFC is the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.

SSR 83-10, found at 1983 WL 31251 (S.S.A. 1983) (Emphasis added).

(Pltf's br. at 4.)   Based upon this definition, the plaintiff argues as follows:  "Since RFC is a medical assessment, an ALJ is precluded from making this assessment without some expert medical testimony or other medical evidence to support his decision."  Id.

It is true that Social Security Ruling 83-10, which was issued in 1983, contains the language quoted by plaintiff's attorney.  The quoted language is found in the glossary section of the Ruling, which provides that the "definitions are based on the regulations . . . ."  The citation of authority for the ruling includes 20 C.F.R. § 404.1545, which was, and continues to be entitled:  "Your Residual Functional Capacity."  The 1983 version of § 404.1545 provided in pertinent part as follows:  "Residual functional capacity is a medical assessment."  However, the regulation has been changed and no longer defines RFC as a medical assessment.  The new regulation took effect November 14, 1991, and after that date RFC was no longer defined as a medical assessment by the

4

Commissioner's regulations.  Therefore, even though SSR 83-10 contains the language

quoted above, the regulation upon which the definition was based has been changed.

Under the current regulations, RFC is not a medical assessment.  As

discussed above, 20 C.F.R. § 404.1545 was amended in 1991 to delete language

defining  RFC as a medical assessment.  The current version provides in pertinent part

as follows:  "Your residual functional capacity is the most you can still do despite your

limitations. We will assess your residual functional capacity based on all the relevant

evidence in your case record." § 404.1545(a).  Nowhere in the current regulations is

RFC referred to as a medical assessment.

Any doubt about whether the current regulations consider RFC to be a

medical assessment is removed by 20 C.F.R. § 404.1527.[1]  That regulation provides

that:

> Medical opinions are statements from physicians and psychologists or
> other acceptable medical sources that reflect judgments about the nature
> and severity of your impairment(s), including your symptoms, diagnosis
> and prognosis, what you can still do despite impairment(s), and your
> physical or mental restrictions.

§ 404.1527(a)(2).  The regulation also provides that opinions on issues reserved to the

Commissioner are not medical opinions:

> (e)  *Medical source opinions on issues reserved to the Commissioner*.
> Opinions on some issues, <u>such as the examples that follow, are not</u>

---

[1]   The current version of 20 C.F.R. § 404.1527 finds its origin in the 1991
regulatory changes that removed "medical assessment" from the definition of RFC in §
404.1545.

> medical opinions, . . . but are, instead, opinions on issues reserved to the
> Commissioner because they are administrative findings that are
> dispositive of a case; i.e., that would direct the determination or decision
> of disability.

§ 404.1527(e)(emphasis added).  One of the excluded examples is the following:

> (e)(2) . . . . Although we consider opinions from medical sources on issues
> such as . . . your residual functional capacity . . . the final responsibility
> for deciding these issues is reserved to the Commissioner.

§ 404.1527(e)(2)(emphasis added).  Therefore, under the current regulations, a

claimant's RFC is specifically excluded from being considered a medical opinion, and

thus cannot be a medical assessment.

Social Security Rulings do not have the force and effect of the law or

regulations and are not binding on the courts.  See, B.B. v. Schweiker 643 F.2d 1069,

1071 (5th Cir. April 27, 1981).[2]  While courts generally defer to Social Security Rulings,

if the ruling is inconsistent with the regulations, the regulation controls  See, Silveira v.

Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000)(court of appeals defers to Social Security

Ruling "unless they are plainly erroneous or inconsistent with the Act or regulations").

The language in SSR 83-10 that defines RFC as a medical assessment is inconsistent

with, and contrary to, the current regulations.  Therefore, the court holds that the

definition of RFC contained in SSR 83-10 has been superceded by regulation.

---

[2]  In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir. 1981)(en banc),
the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth
Circuit rendered prior to October 1, 1981.

**B.**

**THE LAW OF THE FIRST CIRCUIT**

Plaintiff's attorney cites to cases from the First Circuit to support his argument that an ALJ may not assess a claimant's RFC without an RFC assessment from an examining physician.  However, all of the cases cited by the plaintiff were decided prior to November 14,1991, the date on which the Commissioner's regulations ceased to define RFC was a medical assessment.  The court has reviewed the case law in the First Circuit establishing the rule requiring an RFC assessment from a physician ("First Circuit Rule") and concludes that it is based upon regulations that have been superceded.

The First Circuit Rule had it's origin in <u>Berrios v. Secretary of Health and Human Services</u>, a case in which the Appeals Council interpreted raw medical data and clinical tests.  796 F.2d 574, 576 ( 1st Cir. 1986)("We do not think the Appeals Council, composed of lay persons, was competent to interpret and apply this raw, technical medical data.").  In <u>Barrios</u>, the court found there was "nothing in the record, intelligible to a lay person, to indicate that Berrios can currently sit, bend or reach."  The court remanded the case for an assessment of the claimant's vocational capabilities.  <u>Id.</u> at 576.

The cases most frequently cited as establishing the rule in the First Circuit <u>Rivera-Torres v. Secretary of Health and Human Services</u>, 837 F.2d 4 (1st Cir. 1988), and <u>Rivera-Figueroa v. HHS</u>, 858 F.2d 48 (1st Cir. 1988), were both decided prior to the

change in the RFC regulation.  In <u>Rivera Torres</u>, the court found the ALJ lacked

sufficient expertise to assess the plaintiff's RFC:

> Where, as here, there is no residual functional capacity evaluation, the
> Secretary's doctor has found a restriction in forward bending ability (45°
> out of 90°) and a decrease in upper extremity muscle strength, and
> arthritic changes in the spine are present, we think the ALJ, a lay fact
> finder, lacks sufficient expertise to conclude claimant has the ability to be
> on his feet all day, constantly bending and lifting 25 pound weights.
> Rather, an explanation from a doctor is needed.

837 F.2d at 6-7 (citing <u>Barrios</u>).  In <u>Rivera-Figueroa</u>, the court again was concerned that

the "ALJ appears to have interpreted the medical data himself."  858 F.2d at 52.  The

court "question[ed] the ALJ's ability to assess claimant's physical capacity unaided

even by an RFC assessment from a nonexamining doctor."  <u>Id.</u>  (citing <u>Rivera-Torres</u>

and <u>Berrios</u>).

The <u>Rivera-Figueroa</u> court also found the ALJ improperly applied the

grids by finding the claimant's mental impairment imposed no significant limitation on

her ability to work.   This was in spite of "claimant's history of treatment for a

significant mental disorder."  <u>Id.</u> at 52.  The court stated that in such circumstances, an

RFC from an examining psychiatrist was required:

> Absent a residual functional capacity assessment from an examining
> psychiatrist, we do not think the ALJ was equipped to conclude that
> claimant's condition was so trivial as to impose no significant limitation
> on ability to work.

<u>Id.</u> (citing <u>Burgos Lopez v. Secretary</u>, 747 F.2d 37, 41-42 (1st Cir.1984)).  It is this

excerpt from <u>Rivera-Figueroa</u> that plaintiff's attorney quotes to support his argument

that the First Circuit requires an RFC from an examining physician.[3]  However, earlier in it's decision the court remarked that neither the claimant's psychiatrist nor any other doctor "described in lay terms how, employment wise, claimant was restricted or what types of jobs she could handle despite her mental condition." Id. at 50.  In this context, it can be seen that the court's holding was more limited than asserted by the plaintiff. Based upon the facts in Rivera-Figueroa, the court's actual holding is limited to a situation where the ALJ finds no significant mental impairments in spite of a history of treatment for a significant mental disorder.  It does not stand for the proposition that an RFC from a physician is required in cases with no significant treatment history.

In Burgos Lopez, the case cited by Rivera-Figueroa to support the requirement for an RFC from an examining psychiatrist, both the ALJ and an impartial medical advisor found the claimant suffered from a severe mental impairment:  "The ALJ and the impartial medical advisor, a psychiatrist, both of whom had a chance to observe appellant, found that she suffered from a severe mental impairment." Burgos Lopez at 40.  However, the Appeals Council in reviewing the case found the claimant's mental impairments did not significantly affect her RFC. Id. at 41.  The Burgos Lopez court found the Appeals Council should have given "some weight to the ALJ's ability to see and evaluate the claimant." Id. at 42.  It further held as follows:

_____

[3]  Plaintiff incorrectly quotes Rivera-Figueroa as requiring an RFC from an examining physician, rather than from an examining psychiatrist.  (Pltf's br. at 4)

> The Appeals Council cannot blithely dismiss the ALJ's evaluation, and the considerable body of evidence of mental impairment, to the point of inferring on the basis of no affirmative evidence whatever that sedentary jobs for which claimant is <u>physically</u> suited are likewise available for someone in her mental and emotional state.

<u>Id.</u>  Therefore, the court concluded based on the medical record it was improper for the Appeals Council to apply the grids because "a reasonable person would at least want more evidence than presently exists that claimant's non-exertional impairments do not stand in the way of even sedentary employment."  <u>Id.</u>  Again, this case does not support requiring an RFC assessment from an examining medical expert in all cases.  It in fact suggests that deference is due to an ALJ's RFC assessment, which was supported by a medical advisor's opinion.  The court remarked that the ALJ's assessment was also due deference because of his ability to observe the plaintiff at the hearing.

Within two years of its creation in <u>Rivera-Torres</u> and <u>Rivera-Figueroa</u>, the scope of the First Circuit rule began to be limited.  In <u>Gordils v. Secretary of Health and Human Services</u>, 921 F. 2d 329 (1st Cir. 1990), the court held it was "permissible for the Secretary as a layman to conclude that a 'weaker back' cannot preclude sedentary work."  <u>Id.</u>  at 329.  The <u>Gordils</u> court noted the First Circuit Rule did not preclude the ALJ from making common sense judgments about functional capacity:

> This principle does not mean, however, that the Secretary is precluded from rendering common sense judgments about functional capacity based on medical findings, as long as the Secretary does not overstep the bounds of a lay person's competence and render a medical judgment.

10

Id. at 329.  The court observed that in some cases an ALJ is permitted to draw

conclusions about the plaintiff's RFC without an RFC assessment from a doctor:

> Obviously, speaking hypothetically, if the only medical findings in the
> record suggested that a claimant exhibited little in the way of physical
> impairments, but nowhere in the record did any physician state in
> functional terms that the claimant had the exertional capacity to meet the
> requirements of sedentary work, the ALJ would be permitted to reach that
> functional conclusion himself.

Id. (emphasis added).

None of the above cases cited to the regulation's definition of RFC, but

the court in Santiago v. Secretary of Health and Human Services, 944 F.2d 1 (1st Cir.

1991), did refer to § 404.1545(a).[4]  In Santiago, the claimant argued the ALJ was not

qualified to make an RFC finding:  "Claimant contends that, as RFC is a medical

assessment, 20 C.F.R. § 404.1545(a), the ALJ was not permitted to determine RFC

without having in the record an expert's RFC report."  Id. at 4.  However, the court

noted that the medical record "reflects only relatively mild mental and physical

impairments and claimant never clarified the particular respects in which these are

alleged to prevent her form performing her past work."  Id.   Therefore, the court

concluded the claimant had not met her burden of "putting into issue functional loss that

precludes performance of pertinent prior work activities."  Id. at 7.  For this reason the

court found it unnecessary to address whether an RFC from an expert was required.

---

[4]  Santiago was decided on May 28, 1991, prior to the effective date of the
changes to. § 404.1545.

However, it did recognize that even in cases where the claimant's RFC has been put in issue, an expert RFC evaluation would be unnecessary if "the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Id.

Therefore, even under the old regulation, which defined RFC as a medical assessment, the First Circuit Rule allowed ALJs to make common sense RFC findings as long as they were not required to interpret raw and complex medical records. Rather than standing for the absolute requirement of an RFC from a doctor, the First Circuit Rule might better be understood as standing for the proposition that ALJ's may not interpret complex raw medical data in assessing a claimant's RFC.

After November 14, 1991, the effective date of the changes to § 404.1545, the court can find only three published First Circuit cases discussing the rule requiring an RFC from a physician. The first case, Perez v. Secretary of Health and Human Services, 958 F.2d 445 (1st Cir. 1991), was decided on December 30, 1991. The court recognized the holdings in Rivera-Figueroa and Rivera-Torres, however, it held that "a finding that claimant does not suffer from any impairment posing severe or significant exertional restrictions would obviate the need for a medical assessment." Id. at 446-47. The court noted that "there was a paucity of medical evidence in the record concerning these conditions." Id. at 447. The court in Perez did not cite to § 404.1545, making it unlikely the court was aware of the change in the regulations.[5] Had the court intended

---

[5] Even though Perez was decided after the change to the regulations, it was submitted on August 14, 1991, prior to the effective date of the change.

to reiterate the continued viability of the First Circuit Rule after the change to the regulation, a discussion of the new regulation would be expected.

In <u>Manso-Pizarro v. Sec. of Health & Human Services</u>, 76 F.3d 15 (1st Cir. 1996), the court remanded a case where there was "no analysis of functional capacity by a physician or other expert." <u>Id.</u> at 17.  The court's holding again rested on the inability of an ALJ to interpret raw medical data:  "With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." <u>Id.</u> at 17.  However, the court reiterated that if the "the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity <u>even without a physician's assessment</u>." <u>Id.</u> at 17 (emphasis added).  The court stated that it was only when the "claimant has sufficiently put her functional inability to perform her prior work in issue" that an RFC from an expert was required.  <u>Id.</u> (quoting <u>Santiago</u> to support the requirement of an RFC from an expert).  The <u>Manso-Pizarro</u> court did not cite or discuss § 404.1545 in its decision.   However, the court quoted from <u>Santiago</u>, which in turn relied on the old version of that section.  Therefore, it is unclear whether the court was aware the regulations concerning RFC had changed.

In <u>Nguyen v. Chater</u>, 172 F.3d 31 (1st Cir. 1999), the court noted that one of the claimant's treating physicians opined the claimant was incapacitated.  <u>Id.</u> at 35, n.3.  The court stated the ALJ "was not at liberty to ignore medical evidence or

substitute his own views for uncontroverted medical opinions." Id. at 35.  In this

context, the court stated that the ALJ, as a lay person, was "simply not qualified to

interpret raw medical data in functional terms and no medical opinion supported the

determination." Id.  Although the court remarked on the lack of a medical opinion, the

facts of the case limit it's holding to cases in which an ALJ interprets raw medical data

to discredit the opinion of a treating physician.  The court in Nguyen does not say or

hold that an RFC assessment from a physician or other expert is required in all cases.

      Despite the paucity of published decisions in the First Circuit discussing

the First Circuit Rule after 1991, there are unpublished decisions strongly suggesting it

is no longer viable.  For example, in Ramos v. Barnhart, 119 Fed. Appx. 295 (1st Cir.

2005), the court recognized that RFC is not a medical assessment and held the ALJ did

not need to obtain the testimony of a medical expert:

> To the extent appellant suggests that the ALJ should have obtained the
> testimony of a medical expert to resolve any apparent conflicts between
> the treating physicians' assessments and the opinions of the state agency
> physicians, her argument is unavailing because RFC is not a medical
> assessment, but is instead an administrative finding reserved to the
> Commissioner. 20 C.F.R. § 404.1527(e).

Id. at 296.   The court further held "it was appropriate for the ALJ to rely on the reports

of consultative and non-examining physicians in assessing appellant's RFC."  Id.

      The court considers it likely that the First Circuit has recognized that the

changed definition of RFC contained in the Commissioner's regulations has superceded

the First Circuit Rule to the extent it requires an RFC from a physician in all cases.

14

Therefore, the court  declines to adopt the First Circuit Rule as it is expounded by the plaintiff's attorney.[6]  The rule originated at a time when the regulations defined RFC as a medical assessment.  While the First Circuit cases might provide guidance in cases in which ALJs interpret complex raw medical data, the First Circuit Rule is no longer viable to the extent it requires an RFC from a medical expert is all cases.

## C.

### DOES THE LAW OF THIS CIRCUIT REQUIRE AN RFC FROM A PHYSICIAN?

The plaintiff argues that the law of this Circuit requires an RFC from a physician in order to deny benefits.  Plaintiff's brief contains the following:  "An ALJ cannot 'deny disability benefits without some <u>medical opinion</u> that in fact the claimant is capable of gainful employment.'  <u>Goodley v. Harris</u>, 608 F.2d 234, 236 n.1 (5th Cir. 1979)(Emphasis added)."  (Pltf's br. at 6.)  The language quoted by plaintiff's attorney does appear in the case.  However, it is taken grossly out of context.  Below is the quotation in context, with the text quoted by plaintiff's attorney in bold italics:

> At least one circuit has held that where there is medical proof of disability, the government cannot ***deny disability benefits without some***

---

[6]  In the past the undersigned has cited to First Circuit cases to support requiring a physical capacity evaluation from a physician:  "In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required."  <u>Rogers v. Barnhart</u>, No. 06-G-0153-NW (N.D. Ala. filed October 16, 2006)(citing <u>Manzo-Pizarro v. secretary of Health and Human Services</u>, 76 F.3d 15, 17 (1st Cir. 1996).  However, the court also rested its decision on the ALJ's failure to properly develop the record.  Therefore, the  holding of <u>Rogers</u>, as with most district court decisions, is limited to the particular facts presented.

> ***medical opinion that in fact the claimant is capable of gainful
> employment.*** O'Bryan v. Weinberger, 511 F.2d 68 (6th Cir. 1975). This
> Court has often reversed decisions of the Secretary finding no disability
> where the uncontradicted medical evidence indicates that the claimant is
> disabled.

Goodley v. Harris, 608 F.2d 234, 236-37 (5th Cir. 1979) (bold italics indicate portion

quoted by plaintiff's attorney).  Plaintiff's attorney failed to inform the court that the

quoted language represented the holding of another circuit.  Nor did plaintiff's attorney

inform the court that the holding of that circuit was limited to cases in which "there is

medical proof of disability."  Id. at 236.  Nor did plaintiff's attorney inform the court

that the sentence following the quoted clause shows that in the case before the Fifth

Circuit, there was "uncontradicted medical evidence indicat[ing] that the claimant [was]

disabled."  Id. at 236-37.  Earlier in it's decision the Goodley court remarked on the

evidence supporting claimant's claim for disability:  "The medical evidence that

appellant is disabled is without contradiction in the record.  That appellant's malady is

largely psychological rather than physical is also uncontradicted."  Id. at 236.

Therefore, Goodley does not stand for the proposition put forth by plaintiff's attorney.

Plaintiff's attorney artfully excluded language both before and after the

quoted language in an obvious attempt to mislead the court.  Plaintiff's attorney's

selective quotation from a 1979 Fifth Circuit case gives the false impression that the

case held that an RFC from a medical source was required in order to deny disability.

The case in fact stands for the proposition that when there is uncontradicted medical

evidence of disability, the ALJ may not reject it merely because the plaintiff's

16

impairment is mental rather than physical.  Such misrepresentation is not acceptable advocacy.

In an unpublished decision, the Eleventh Circuit has implicitly refused to adopt the First Circuit Rule.  In Green v. Social Security Administration, the court found the ALJ had properly refused to credit a Physical Capacities Evaluation ("PCE") from claimant's treating physician.  223 Fed. Appx. 915, 922-23 (11th Cir. 2007).  The court rejected claimant's argument that without the PCE, there was nothing in the record upon which the ALJ could base his RFC finding.  Id. at 923.  The court held that other evidence from the plaintiff's doctors (which did not contain a PCE or RFC assessment) was sufficient to support the ALJ's finding that the claimant could perform light work.  Id. at 923-24.

Therefore, the court concludes  that the law of this Circuit does not required an RFC from a physician.  It is also unlikely, based upon unpublished decisions, that the Eleventh Circuit would adopt the First Circuit Rule if the issue were to be presented in a future appeal.

**D.**

**IS MEDICAL EVIDENCE OF A CLAIMANT'S RFC REQUIRED
AT STEP FIVE OF THE SEQUENTIAL PROCESS?**

Plaintiff's attorney argues that other district courts have adopted the First Circuit Rule.  To support this argument, plaintiff cites to Coleman v. Barnhart, 264 F.

Supp.2d 1007 (S.D. Ala. 2003).  In <u>Coleman</u>, the district court observed that it had often

held that an RFC from an examining physician is required at step five:

> The undersigned finds it unclear how the ALJ found plaintiff could meet
> the threshold physical requirements of medium work, in absence of a
> physical capacities evaluation ("PCE") completed by a treating or
> examining physician, particularly in light of plaintiff's numerous severe
> impairments. This Court has held on a number of occasions that the
> Commissioner's fifth-step burden cannot be met by a lack of evidence, or
> by the residual functional capacity assessment of a non-examining,
> reviewing physician, but instead must be supported by the residual
> functional capacity assessment of a treating or examining physician.

<u>Id.</u> at 1010.  The district court in <u>Colman</u> cites to no regulation or case law to support

this proposition.  In fact, the Commissioner's regulations now provide that the

Commissioner is "not responsible for providing additional evidence about your residual

functional capacity [at the fifth step] because we will use the same residual functional

capacity assessment that we used to determine if you can do your past relevant work."

20 C.F.R. § 404.1560(c) (2011).  The current regulation was the result of changes made

to this section that became effective August 26, 2003.  The reason for the change was

explained by the Social Security Administration as follows:

> We are modifying previous paragraph (c) to make clear that, if we decide
> at step 5 that you are not disabled, we are responsible for providing
> evidence of other work you can do (consistent with new §§ 404.1512(g)
> and 416.912(g)). The modified paragraph also makes clear that <u>we are not</u>
> <u>responsible for providing additional evidence of RFC or for making</u>
> <u>another RFC assessment at step 5. This is because we use the same RFC</u>
> <u>assessment at step 5 that we made before we considered whether you have</u>
> <u>the RFC to do past relevant work at step 4, a point in our process at which</u>
> <u>you have the burdens of production and persuasion.</u>

68 Fed. Reg. 51,153-01 (August 26, 2003) (emphasis added).  In other words, RFC is

assessed at a time in the sequential process when the claimant bears both the burden of

production and persuasion.  The Administration explained why the Commissioner does

not bear any burden to prove the claimant's RFC at step five:

> However, as stated by the Supreme Court, "It is not unreasonable to
> require the claimant, who is in a better position to provide information
> about his own medical condition, to do so." Bowen v. Yuckert.  Thus, the
> only burden shift that occurs at step 5 is that we are required to prove that
> there is other work that you can do, given your RFC, age, education, and
> work experience. That shift does not place on us the burden of proving
> RFC.

Id. (emphasis added).

In the case cited by the Administration, Bowen v. Yuckert, 482 U.S. 137

(1987), the Court was considering the validity of the Commissioner's "severity

regulation," which requires the claimant to show at step two that he has a medical

impairment or combination of impairments that significantly limits his "abilities and

aptitudes necessary to do most jobs."[7]  482 U.S. at 146.  The Court noted the

Commissioner "has express statutory authority to place the burden of showing a

---

[7]  The current version of this regulation provides in pertinent part as follows:

> If you do not have any impairment or combination of impairments which
> significantly limits your physical or mental ability to do basic work
> activities, we will find that you do not have a severe impairment and are,
> therefore, not disabled.

20 C.F.R. § 404.1520(c).

19

medically determinable impairment on the claimant" because the Social Security Act "provides that '[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.'"  Id. (quoting 42 U.S.C. § 423(d)(5)(A)).  The Court explained that "the severity regulation does not change the settled allocation of burdens of proof in disability proceedings."  482 U.S. at 146, n. 5.  The Court also noted that the plaintiff bears the burden in the sequential evaluation through step four, and concluded that "[t]his allocation of burdens of proof is well within the Secretary's 'exceptionally broad authority' under the statute."  Id.   The Court concluded:  "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."  Id.

The Commissioner's regulations require a claimant to produce evidence showing that he is disabled:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a)(emphasis added).  When a claim is not decided based upon the Listings at step three, how the claimant's medical impairment affects his ability to work becomes an issue.  Therefore, at step four § 404.1512(a) places the burden on the

plaintiff to "furnish medical and other evidence" about his impairment and "its effect on [his] ability to work on a sustained basis."  Based upon the reasoning of the Court in Bowen v. Yuckert, the court cannot find this burden is beyond the regulatory authority granted to the Commissioner by the Act.

District court cases such as Coleman that attempt to place the burden of proving the claimant's RFC on the Commissioner at step five are inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit.  Therefore, the court declines to follow such reasoning.

**E.**

**WAS A MEDICAL CONSULTANT REQUIRED AT THE STATE AGENCY LEVEL IN THE PRESENT CASE?**

Plaintiff's attorney argues that the Commissioner's regulations were violated because at the state agency level, a State agency medical consultant did not review the medical evidence:

The fact no State agency medical consultative [sic] reviewed the medical evidence violated 20 C.F.R. § 404.1546, which requires that:

State agency staff medical or psychological consultants or other medical or psychological consultants designated by the Commissioner are responsible for ensuring that the State agency makes a decision about your residual functional capacity. In cases where the State agency makes the disability determination, *a State agency staff medical or psychological consultant must assess residual functional capacity where it is required*.

Id. (Emphasis added).

21

(Pltf's br. at 3.)  The argument of plaintiff's attorney is flawed in several respects.  First,

it cites to a regulation no longer in effect.  The version quoted by plaintiff's attorney

was last effective in 2003.

        But more importantly, in plaintiff's case a single decision maker made the

disability determination at the State agency level.  Under the regulations in effect on

January 25, 2007, the date on which the State agency decided plaintiff's claim, Alabama

was one of several states in which the Commissioner was testing modifications to the

disability determination process.  See, 71 Fed. Reg. 45,890 (August 10, 2006).  These

tests are conducted under the authority of 20 C.F.R. § 404.906, which in 2007 provided

in part as follows:  "Notwithstanding any other provision in this part or part 422 of this

chapter, we are establishing the procedures set out in this section to test modifications to

our disability determination process."  20 C.F.R. § 404.906 (2007)(emphasis added).

Therefore, the provisions in § 404.906 take precedence over the provisions found in

§ 404.1546.  One of the modifications  being tested is the "single decision maker"

model.  The single decision maker procedure is set forth as follows:

> In the single decisionmaker model, the decisionmaker will make the
> disability determination and may also determine whether the other
> conditions for entitlement to benefits based on disability are met. The
> decisionmaker will make the disability determination after any appropriate
> consultation with a medical or psychological consultant. The medical or
> psychological consultant will not be required to sign the disability

determination forms we use to have the State agency certify the
determination of disability to us (see § 404.1615). [8]

20 C.F.R. § 404.906 (2007)(emphasis added).  Therefore, it does not appear that the
procedure at the State agency level in the present case violated the regulations.

Plaintiff's argument on this point is also not valid because her case
proceeded to the ALJ level.  The regulations provide that the ALJ is responsible for
assessing RFC at the ALJ level:

If your case is at the administrative law judge hearing level under
§ 404.929, . . . the administrative law judge . . . is responsible for
assessing your residual functional capacity.

20 C.F.R. § 404.1546(c).  The Commissioner's regulations do not require the ALJ to
base his RFC finding on an RFC assessment from a medical source.  Therefore, the
failure to include such an opinion at the State agency level does not render the ALJ's
RFC assessment invalid.

## F.

## AN RFC FROM A PHYSICIAN WAS NOT REQUIRED IN THE PRESENT CASE

Under the Commissioner's regulations, an RFC is not considered to be a
medical assessment.  Binding precedent in this Circuit does not require an RFC from a
physician and this court declines to adopt the First Circuit Rule as propounded by the

---

[8] In plaintiff's case, Robert Estock, M.D., signed the Psychiatric Review
Technique form.  Record 267.  It is the physical RFC assessment signed by the State
agency single decision maker that plaintiff argues violates the regulations.

plaintiff or other district courts.  The single decision maker at the State agency level was not required to have a medical consultant assess the plaintiff's physical RFC. Therefore, plaintiff's argument for reversal based upon the absence of an RFC from a physician is without merit.

## II.

## NEW EVIDENCE

In addition to arguing for reversal based upon the absence of an RFC assessment from a physician, plaintiff argues for a remand based upon evidence submitted to the Appeals Council.  The court has carefully reviewed the record and finds that the decision of the ALJ must be remanded for consideration of the new evidence.  At step two of the sequential evaluation the ALJ found the plaintiff's mental impairments did not cause more than minimal limitations in the plaintiff's ability to perform basic mental work activities.  In determining the plaintiff's RFC the ALJ assessed no mental restrictions whatsoever.  The evidence submitted to the Appeals Council consists of treatment notes from plaintiff's treating psychiatrist, Dr. Anakwanze from January 2, 2007, through October 22, 2008.  A review of that evidence shows that the ALJ's finding of no mental restrictions is undermined by the new evidence.

Doctor Anakwanze began treating the plaintiff on January 2, 2007, when she was diagnosed with Major Depression, Severe and Post Traumatic Stress Disorder

(PTSD).  She was given a GAF score at that time of 45.[9]  On February 9, 2007, Dr.

Anakwanze noted plaintiff's depression had improved a little, and she was given a GAF

score of 55-60.[10]  On March 9, 2007, the plaintiff reported she was less depressed and

Dr. Anakwanze found her depression had improved.  She was given a GAF score of

65.[11]  On July 5, 2007, the plaintiff's mood was depressed and her affect was sad.  On

August 5, 2007, it was noted she was doing better.  On September 27, 2007, plaintiff's

mood was euthymic[12] and her affect was pleasant.  On October 25, 2007, the plaintiff

reported being stressed about family issues after her son returned from Iraq.  On

November 26, 2007, the plaintiff continued to be diagnosed with Major Depressive

Disorder and PTSD.

_____

[9]  The Global Assessment of Functioning (GAF) Scale is used to report an
individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental
Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR").  A GAF of 41-50 indicates:
"Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social, occupational, or school functioning
(e.g., no friends, unable to keep a job)."  DSM-IV at 32.

[10]  A GAF rating of 51-60 reflects: "Moderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) OR moderate difficulty in social,
occupational, or school functioning (e.g., few friends, conflicts with peers or co-
workers.)"  DSM-IV-TR at 34.

[11]  A GAF of 61-70 is defined as some mild symptoms (e.g., depressed mood and
mild insomnia), or some difficulty in social, occupational, or school functioning (e.g.,
occasional truancy, or theft within the household), but generally functioning pretty well,
with some meaningful interpersonal relationships. DSM-IV-TR, 34.

[12]  Euthymia is defined as "a state of mental tranquility and well-being; neither
depressed nor manic."   Dorland's Illustrated Medical Dictionary (28th Edition).

On January 25, 2008, the plaintiff reported to Dr. Anakwanze that she feared she was losing her mind.  She reported that  her husband had started gambling on the internet and he was not sleeping.  She also reported hearing jabbering voices for several months.  Dr. Anakwanze found plaintiff's mood depressed, and assessed a GAF of 45.  He concluded she was not delusional, but did have hallucinations.  On February 5, 2008, the plaintiff reported she was "bouncing off the walls" and hearing voices.  At this time Dr. Anakwanze found plaintiff's mood was less depressed and his diagnosis was Major Depression, with psychotic features.  On April 2, 2008, Dr. Anakwanze found the plaintiff's mood to be depressed and her affect was sad.  The plaintiff's medications were increased.   On July 2, 2008, the plaintiff reported that she had been doing much better until her son moved back home.  Dr. Anakwanze found plaintiff was less depressed and doing well.  He assessed a GAF score of 68.  On August 27, 2008, the plaintiff's mood was depressed and her affect was anxious.  She had poor concentration and her GAF score was 58.

The next visit with Dr. Anakwanze was on October 22, 2008, five days after the ALJ's decision.  The plaintiff reported to Dr. Anakwanze that she had suicidal thoughts and had been depressed lately.  On exam, however, Dr. Anakwanze found plaintiff's mood was less depressed and her affect was pleasant.  The plaintiff denied suicidal ideation and Dr. Anakwanze noted she was "doing well" and was not suicidal. He assessed a GAF score of 60.

Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case.  [W]e will consider at each step of the review process any information you present as well as all the information in our records.").  The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b); <u>Keeton v. Department of Health and Human Services</u>, 21 F.3d 1064, 1066 (11th Cir. 1994). Because the Appeals Council in the present case actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review the plaintiff's case in light of that evidence.

When new evidence is submitted to the Appeals Council, the Regulations require the Appeals Council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).  This standard differs from the standard set out in § 404.970(a)(3) (governing review of the ALJ's decision when new evidence is not submitted), which requires the Appeals Council to review the case if it finds that the ALJ's "action, findings or conclusions . . .  are not supported by substantial evidence."  Therefore, when new evidence is submitted to the Appeals Council it is possible to find that the Appeals Council committed an error of law in not reviewing the

27

case, even though the ALJ's decision might have been supported by substantial evidence.

In determining whether the Appeals Council improperly denied review of the plaintiff's claim, this court considers the evidence submitted to the Appeals Council. Ingram v. Astrue, 496 F.3d 1253, (11th Cir. 2007).  When the evidence from Dr. Anakwanze is considered, it is clear the ALJ's finding as to the severity of the plaintiff's mental impairment is "contrary to the weight of the evidence currently of record."  See, § 404.970(b)  The evidence from Dr. Anakwanze summarized above shows that the weight of the evidence before the Appeals Council showed plaintiff's mental impairments imposed more than a minimal limitation on her ability to perform basic mental work activities.  During the period of plaintiff's treatment from January 2, 2007, through the date of the ALJ's hearing decision, the plaintiff was assessed a GAF score of 45 on two occasions.  This is indicative of a "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.  On another occasion the plaintiff was given a GAF score of 55-60, which is indicative of "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers.)  DSM-IV-TR at 34.  Other treatment notes show the plaintiff continued to suffer from depression and PTSD throughout this period.  Although there are several treatment notes showing improved symptoms, with GAF scores of 65 and 68, the weight of the evidence is that plaintiff's depression and

PTSD imposed more than a minimal limitation in the plaintiff's ability to perform work related activities.  Therefore, the ALJ's finding that the plaintiff's mental impairment was not severe at step two, and his inclusion of no mental restrictions in his RFC finding were contrary to the weight of the evidence.  See, § 404.970(b).  Accordingly, the Appeals Council committed an error of law in failing to review the plaintiff's claim in light of the new evidence from Dr. Anakwanze.  See, Ingram at 1265 (discussing Keeton v. Department of Health and Human Services, 21 F.3d 1064 (11th Cir. 1994)).  The action will be remanded to the Commissioner for reconsideration of plaintiff's claim in light of the evidence from her treating psychiatrist, Dr. Anakwanze.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 12 April 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

29